In re **HILLSBOROUGH HOLDINGS CORPORATION, et al.,** Debtors.

**HILLSBOROUGH HOLDINGS CORPORATION, et al.,**
Plaintiffs,

v.

**The CELOTEX CORPORATION,** et al., Defendants.

Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1.
Adv. No. 90–0003.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 7, 1991.

Don Stichter, Tampa, Fla., Michael J. Crames, P.C., New York City, for debtors.

Elihu Inselbuch, New York City, Marsha G. Rydberg, Tampa, Fla., for defendants.

## ORDER ON MOTION TO COMPEL DISCOVERY ORDER ON MOTION FOR PROTECTIVE ORDER

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with notice to all parties in interest to consider a Motion to Compel Discovery, filed by some of the defendants, (asbestos defendants) named in the above-captioned Adversary Proceeding, and a Motion for Protective Order, filed by Jim Walter Corporation (JWC) and originally by Hillsborough Holdings Corporation (HHC), the Plaintiff who initiated this Adversary Proceeding. In its Complaint HHC seeks declaratory relief and requests that this Court determine that the corporate veil separating JWC from Celotex, the other defendant named in the Complaint, cannot be pierced for the purpose of imputing Celotex' liabilities to the asbestos defendants to JWC. The documents sought to be produced by the asbestos defendants, and, in turn, sought to be protected initially by HHC and later by JWC, can be grouped and identified as follows:

1. Documents Nos. 3 through 8, 10 through 15 and No. 28 identified in JWC's Original Log Of Documents Claimed to be privileged. These documents are monthly statistics prepared by the Legal Department of JWC and communicated internally to Celotex, and Carey of Canada (Carey), and cover the fiscal year of 1989. These documents also include a schedule of insurance coverage which was available for asbestos-related claims prepared by the Legal Department of JWC and communicated internally to the Legal Department of JWC and to Celotex and Carey. These documents are sought to be protected by JWC on the basis that they are covered by the attorney-client or in the alternative, that they represent attorney's work product.

In addition, this log also includes three documents, numbered 80, 82 and 83, which are identified as "audit inquiry letters." These were authored by various attorneys of JWC and sent to Price Waterhouse, certified public accountants for JWC, in connection with accounting certifications prepared for public financial statements. These documents are sought to be protected by the accountant/client privilege.

2. Documents No. 29 through 47. These documents are identified on JWC's Supplemental Index of Privileged Documents. These documents were prepared by the Legal Department of JWC, Robert J. Rosenberg, Esq., outside counsel for JWC and an unnamed special corporate consultant retained by JWC. These documents relate primarily to the employment of the corporate consultant firm and communications by the corporate consultants. These documents are sought to be protected by the attorney/client privilege and the work product privilege.

3. The documents in this group are set forth in HHC's Log of Documents described as "Debtor's Privilege Log Now In

The Possession and Control of JWC". These documents were previously in HHC's possession and are now in the possession of JWC. They are identified primarily as correspondence and memoranda from the JWC Legal Department or attorneys within the Legal Department to JWC officers, to the JWC Legal Department or to Price Waterhouse. An interesting aspect to this batch of documents is that these documents were left in the corporate headquarters of HHC after the completion of the leveraged buy-out which culminated in the acquisition of JWC and its subsidiaries and the sale of JWC and Celotex. They remained at the now-HHC headquarters for two and one-half years and were, in fact, located there at the time this Motion to Compel was filed by the asbestos defendants. In fact, they were initially claimed as privileged documents by HHC. These documents were returned to JWC by HHC while the Motion to Compel was still pending. JWC now asserts the attorney/client privilege, and in the alternative, the doctrine of work product to protect these documents from discovery. These documents are numbered 1 through 5, No. 8, Nos. 10 and 11, Nos. 17 through 21, No. 28, No. 52, No. 54 and all documents on Debtor's privilege log titled "Documents Protected by the Accountant/Client Privilege."

It is important to note at the outset that the Court ordered parties to conduct their discovery on an expedited schedule limited to the issue of the corporate veil-piercing and not to the fraudulent conveyance issues which is the second prong of the controversy between HHC and the asbestos defendants.

Before considering the merits of this discovery controversy, it should be noted that evidentiary privileges are not favored by law because they limit disclosure of information that may be relevant to the issues to be resolved in the lawsuit. Privilege does not enlighten but obscures the truth and for this reason it should be construed as narrowly as possible. *In re Hillsborough Holdings Corp.*, 118 B.R. 866, 869 (Bankr.M.D.Fla.1990), *citing, U.S. v. Suarez*, 820 F.2d 1158, 1159 (11th Cir.), *cert.*

*denied*, 484 U.S. 987, 108 S.Ct. 505, 98 L.Ed.2d 503 (1987). It is well settled that one who seeks to invoke the evidentiary privilege has the burden of proving that each specific communication or document sought to be protected falls within the privilege protection. *In re Hillsborough Holdings Corp.*, 118 B.R. at 869. *Accord In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir.1987); *In re Grand Jury Subpoena*, 788 F.2d 1511, 1511–12 (11th Cir.1986); *In re Grand Jury Proceedings, (Matter of Freeman)* 708 F.2d 1571, 1575 (11th Cir.1983).

 The attorney-client privilege, of course, protects only confidential communication between an attorney and a client made for the purpose of obtaining or dispensing legal advice. It does not protect communications between attorney and client where the communication is primarily for business purposes. *Ray v. Cutter Laboratories*, 746 F.Supp. 86, 87 (M.D.Fla. 1990); *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir.1981). Documents listed on JWC's log include compilations of statistics relating to asbestos litigation and judgments, as well as insurance coverage data that the JWC legal staff created. These were apparently created for accounting and insurance planning and were not created as communications between an attorney and a client to obtain or render legal advice but rather for business purposes. In addition, these communications were often internal within the Legal Department and, therefore, not between attorney and client, or vice versa. Finally, some of these documents were communications to Celotex and Carey, third parties who were not the clients of the authors of the communications. This, of course, automatically destroyed the confidential nature of the communications which is indispensable to the privilege claimed.

 JWC asserts the accountant/client privilege to protect documents Nos. 80, 82 and 83. These are described as "audit inquiry letters." Although no accountant/client privilege is recognized by the Federal Rules of Evidence, authority exists to support application of the privilege in

the Bankruptcy Court, where the rule of decision is State law and the State recognizes the accountant/client privilege. *In re Tidewater Group, Inc.,* 65 B.R. 179 (Bankr. N.D.Ga.1986). Russell *Bankruptcy Evidence Manual* § 501.4 (1990). In this instance, the rule of decision of corporate veil-piercing issues is clearly law of Florida, which recognizes the accountant/client privilege. *Fla.Stat.* § 90.5055. The accountant/client privilege requires a communication made in confidence and not information furnished to accountants or by the accountants, intended to be disclosed to third parties. *Fla.Stat.* § 90.5055(1)(c). Clearly this privilege cannot protect communications made in the preparation of documents that the client intended to make available to the public. The "audit inquiry letters" are requests from attorneys to accountants for information to be used in the preparation of *public* financial statements, and not of the nature protected by this privilege. *Hillsborough Holdings Corporation v. The Celotex Corporation,* 118 B.R. 866 (Bankr.M.D.Fla.1990).

 The second group of documents are listed on JWC's Supplemental List of Privileged Documents. These documents are primarily correspondence to and from the "corporate consultants" and the Legal Department of JWC. JWC again asserts the doctrine of work product and in the alternative, the attorney/client privilege as to these documents. Work product applies only to documents created primarily to prepare for and assist in the defense or prosecution of an identifiable, specific lawsuit which is either pending or threatened. *In re Hillsborough Holdings Corp.,* 118 B.R. at 870; *U.S. v. Gulf Oil Corp.,* 760 F.2d 292, 296–97 (Temp.Emer.Ct.App.1985); *Southern Film Extruders, Inc. v. Coca–Cola,* 117 F.R.D. 559 (M.D.N.C.1987). Although some of these documents are listed with a description that seems to indicate preparation of litigation, because of the dates listed on these documents, it is clear that no litigation was existing or impending at that time. Therefore, they cannot be protected by the work product doctrine. In addition, the attorney/client privilege requires communication between an attorney and the client. Some of these documents are communications between the corporate consultants and the Legal Department of JWC.

 JWC contends that the work product of the corporate consultants is protected by the attorney/client privilege even though the corporate consultants were neither attorneys nor clients. In support of the claimed privilege, JWC cites *United States v. Kovel,* 296 F.2d 918 (2nd Cir. 1961). In *Kovel,* the Second Circuit held that the attorney/client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put into usable form as part of legal advice by attorney to the client. The facts in Kovel no doubt involved communications, but they were clearly communications made "in confidence for the purpose of obtaining legal advice from the lawyer." *United States v. Kovel, supra, Federal Trade Commission v. TRW, Inc.,* 628 F.2d 207, 213 (D.C.Cir.1980); *Summit Ltd. v. Levy,* 111 F.R.D. 40, 41 (S.D.N.Y.1986). However, where the information is turned over to the third party for reasons unrelated to seeking or rendering legal advice, the attorney-client privilege is waived. *Eglin Federal Credit Union v. Cantor,* 91 F.R.D. 414, 418 (N.D.Ga.1981). After review of the documents in this category, it is clear that the information contained in the communications had nothing to do with legal advice furnished by an attorney to the client.

Finally, a concern was raised that discovery as to these documents overreached the limited boundaries set out by this Court. This Court has limited discovery relating to the veil-piercing issue. Any issues of fraudulent conveyance were to be pursued after the resolution of the veil-piercing issues. Although the descriptions of documents Nos. 31 and 43 make vague references to the "Structure of JWC and its subsidiaries," it is clear that the central issue is not fraudulent conveyance but piercing of the corporate veil. Therefore, these documents fall within the scope of discovery as limited by this Court.

Finally, documents in Group 3 are likewise not protected by the asserted privileges. The Price Waterhouse documents contained in this group are claimed to be protected by the accountant/client privilege. A threshold issue exists which prevents this Court from reaching the issue of the applicability of the accountant/client privilege as to these documents. The threshold question is whether all privilege has been waived by JWC. The documents involved in this group were left in JWC's corporate headquarters when Kohlberg, Kravis, Roberts & Co. (KKR) were successful in buying the assets of JWC and creating HHC. Two and one-half years later the attorneys at HHC, after having claimed these documents as privileged, returned same to JWC. An integral aspect of any privilege is confidentiality. One measure of confidentiality is the degree of care exhibited in the keeping of the documents. *In re Horowitz*, 482 F.2d 72, 82 (2nd Cir.) *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). JWC has not met the threshold of confidentiality required before privilege can be recognized. Instead of taking steps to insure the continuing confidentiality of these documents, it left these files in the Debtor's possession for three years after the Debtors had sold JWC and Celotex to a third party. Thus, JWC failed to maintain its former records in a manner consistent with a desire to preserve their confidentiality. Since that failure destroys whatever claim to confidentiality JWC may once have had with respect to these documents, these documents are no longer protected by the privilege. Thus, in view of this the accountant/client privilege which is asserted is moot.

The final issue to be resolved by this Court relates to the depositions of Mr. Robert Emerton, Mr. Rosenberg and Mr. Kenneth Hyatt. JWC has objected to questions probing the employment of the corporate consultants, documents and information provided to them and their duties and responsibilities. Questions presented to the deponents relating to the hiring of the "corporate consultants" will be allowed inasmuch as they request factual information. With relation to other documents not protected by the privileges asserted, questions relating to what information was received, what underlying facts were considered and what documents were requested, will have to be answered provided, however, that the request is for precise factual information and not for eliciting opinion or the legal advice given by the deponents.

In view of the foregoing, this Court is satisfied that the various privileges asserted by JWC do not protect the documents which they seek to protect.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Compel Discovery filed by the Asbestos Defendants be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Protective Order filed by JWC be, and the same is hereby, denied. JWC is directed to produce the sought documents within 10 days of the date of this Order.

DONE AND ORDERED.